U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR - 9 2026

CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA

v.

RICHARD REINALDO GARCIA (01)

No. 4:26-MJ- 270

## CRIMINAL COMPLAINT

I, Megan Woodruff, a Special Agent with the Federal Bureau of Investigation ("FBI"), after being duly sworn, depose and state the following is true and correct to the best of my knowledge and belief:

### WIRE FRAUD IN VIOLATION OF 18 U.S.C § 1343

Starting in or about August 2021, and continuing until in or about March 2026, in the Fort Worth Division of the Northern District of Texas and elsewhere, Defendant Ricard Reinaldo Garcia, by and through the entities, Gracia Church (dba Ministerio Gracia) and A Pesar de Todo, did knowingly engage in a scheme to defraud victims and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises with the intent to defraud those victims, and for the purpose of executing the scheme and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce certain signals and sounds in violation of 18 U.S.C. § 1343, that is, the knowingly devised and executed a scheme to defraud and obtain money and property by means of materially false and fraudulent pretenses, representations and promises, as further described below, and in furtherance of that

Complaint -- Page 1

scheme caused the transmission of interstate wire communications between Texas, Arizona, Arkansas, and other states through electronic means (e.g., emails, text messages, Instagram and Facebook posts), and banking transactions, all done in violation of 18 U.S.C. §1343.

## INTRODUCTION

1.    I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since August 2023. I presently am assigned to work on white collar criminal matters and complex financial crimes. As a Special Agent of the FBI, I have received training and participated in the normal methods of investigation and legal matters, including, but not limited to: interviewing of witnesses and subjects, physical surveillance, the use and analysis of transactional data, Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause.  During my tenure as an FBI Special Agent, I have participated in all the normal methods of investigation, including, but not limited to: electronic surveillance, visual surveillance, interviews of witnesses, the execution of search warrants, the use of confidential informants and cooperating witnesses, and the use and analysis of toll records. I am vested with the authority to investigate violations of Federal laws, including Title 18 and Title 26 of the United States Code.

2.    The facts set forth presented are based upon my personal observations, my training and experience, and information obtained from other law enforcement agents, government agencies, and witnesses. Because this affidavit is being submitted for the limited purpose of supporting the issuance of a criminal complaint and arrest warrant for

Complaint – Page 2

the defendants, I have not set forth in this affidavit everything I have learned from this investigation. Rather, I have set forth only those facts necessary to establish probable cause a violation of federal law has been committed.

## THE SCHEME TO DEFRAUD

### The Object of the Scheme to Defraud

3.     The object of the scheme to defraud was for **Garcia**, and others, by and through the entities Gracia Church, and A Pesar de Todo, hereinafter referred to as "APDT", to defraud individual investors of their money and property so the defendant could enrich himself through Gracia Church and APDT. Specifically, he would induce others to enter into contracts through false pretenses promising significant returns. To that end, **Garcia**,

   a.  Executed Partnership Agreements, or "Church Flipping" contracts with individual investors that falsely represented that **Garcia** would use their funds to renovate church properties owned by **Garcia**. The purported purpose of the renovations were to improve the properties to be ready to sell. With the profits made from that sale of the church property, **Garcia** promised investors varying Returns of Investment (ROIs) as outlined in their contracts. In reality, **Garcia** would either roll-over victim's funds to other projects without their consent, or did not sell the properties;

   b.  Executed Investment Contracts, of "Joint Venture Agreements" with individual investors that falsely represented that **Garcia** would use their funds to host international Christian concerts. **Garcia** purported that through sponsorship deals, and agreements with local government entities,

Complaint — Page 3

such as CoCrea in Colombia, the concerts would generate profits that would be used to pay back the investors. With profits from the concerts, Garcia promised investors varying ROIs, as outlined in their individual contracts. In reality, Garcia only hosted one concert and did not use the funds to pay back investors;

c. Directed investors to send their investment funds to Garcia via Church "Donations" to Gracia Church operated bank accounts;

d. Entered into duplicative contracts with unrelated individual investors, thus offering investors interest already "owned" by other individual investors;

e. Falsified documents to solicit additional investments and loans from victims;

f. Made lulling payments to previous investors;

<u>Manner and Means of the Scheme to Defraud</u>

*Background on Bank Accounts*

4. It was further part of the scheme to defraud that from in or around August 2021, through at least March 2026, for the defendant, by and through the entities Gracia Church and APDT, to secure funds from victims by executing investment contracts with victims who intended to either invest in church flipping, or in upcoming concerts hosted by APDT, wherein, victims agreed to invest a certain amount in exchange for Garcia's agreement to use the funds as specified in the executed contracts. In reality, Garcia did not use victim funds to remodel churches, or host Christian concerts.

Complaint – Page 4

5.    It was further part of the scheme and artifice to defraud that from in around August 2021, through at least March 2026, the defendant, controlled various bank accounts in the name of Garcia, Minsterio Gracia, Gracia Church, and/or A Pesar de Todo, LLC. Gracia Church (formerly known as Dallas West International Church and Ministerio Gracia; recently renamed Igelsia Gracia de Texas). Texas Secretary of State records indicate: on approximately November 8, 2022, the entity Iglesia Gracia de Texas registered with a mailing address and registered office at 1700 New York Ave, Arlington, Texas; and on approximately July 6, 2024, the entity A Pesar de Todo, LLC registered with a mailing address at 5331 Hidden Valley Court, Mansfield, Texas.

6.    These accounts include Bank of America (BoA) account nos: BoA x2450, x6080, x6077; Cadence Bank (CB) account nos: CB x6355; and Frost Bank (FB) account nos: FB x9115.

*Church Remodel Solicitations*

7.    It was further part of the scheme and artifice to defraud from at least in or around August 2021 through at least March 2026, the defendant communicated with victims face-to-face, via email, and via text messaging apps (i.e. WhatsApp) to directly solicit victims to invest in remodeling of various church properties Garcia had allegedly purchased. For example:

a.    On or about August, 2021, Garcia entered into a Partnership Agreement with Individual A, Individual B, Individual C, and Individual D. The Partnership Agreement was for a real-estate investment project (a Church property) located at 1919 South Collins St., Arlington, TX 76010. As part

Complaint – Page 5

of their capital contribution, as outlined in the agreement, Individual A and Individual B sent Garcia a cashier's check for $50,000. The cashier's check was paid to "MG Kingdom (Collins Project)," with the memo line "CAPTIAL INVESTMENT FOR 1919 S COLLINS ST, ARLINGTON, TX 76010." On or about September 1, 2021, the cashier's check from Individuals A and B was deposited to Gracia Church's CB x6355.

    i. Sometime thereafter, Garcia told Individual A and Individual B, that their investment had grown by 55%, and he had used their funds to invest in a new project. Neither Individual A nor Individual B consented to their funds being rolled-over by Garcia.

b. On or about October 06, 2023, Individual C, by and through their company, entered into a Partnership Agreement with Garcia for a real-estate investment project (a Church project) for a property located at 2401 Hazel Street, Texarkana, Texas 75503. As part of their capital contribution outlined in the Partnership Agreement, Individual C wired $125,000 to BoA x2450 on October 18, 2023.

    i. In or around 2024, Garcia advised Individual C that the Church property located in Texarkana had sold, and that Garcia had used the profits to purchase another church. Garcia provided Individual C with Property Agreement and Sales Agreements related to the sale. Individual C did not authorize a roll-over of their funds. Furthermore, Individual C subsequently learned the documents

Complaint – Page 6

provided by **Garcia** were fraudulent, and in fact, **Garcia** had never purchased the Church in 2023.

c.  On or about November 06, 2023, Individual C, by and through their company Careal LLC, entered into a Partnership Agreement with **Garcia** for a real-estate investment project (a Church project) for a property located at 701 East Queens Street, Lubbock, Texas 79408. As part of their capital contribution outlined in the Partnership Agreement, Individual C wired $168,000 to BoA x2450 on November 03, 2023.

   i.  In or around 2024, **Garcia** advised Individual C that the Church property located in Lubbock had sold, and that **Garcia** had used the profits to purchase another church. **Garcia** provided Individual C with a Property Agreement and Sales Agreements related to the sale. Individual C did not authorize a roll-over of their funds. Furthermore, Individual C subsequently learned the documents provided by **Garcia** were fraudulent, and in fact, **Garcia** had never purchased the Church in 2023.

8.  It was further part of the scheme and artifice to defraud that the defendant instructed victims to make their investments via payments to the church as donations.

   a.  **Garcia** directed Individual C to make their investments as donations to Ministerio Gracia Church. Individual C subsequently received a Donation Letter from Ministerio Gracia which listed donations to the Church, the

Complaint – Page 7

amount listed as donations was the amount that Individual C had invested up to that point in time.

*Concert Investment Solicitations; APDT*

9.    It was further part of the scheme and artifice to defraud from at least in or around August 2021 through at least March 2026, the defendant communicated with victims face-to-face, via email, and via text messaging apps (i.e. WhatsApp) to directly solicit victims to invest in international Christian concerts.

    a.  On or about March 01, 2024, Individual E and Individual F entered a Joint Venture Agreement with **Garcia**. The agreement was established under **Garcia's** company, Richard Garcia Ministry, for a musical concert in the Dominican Republic, hosted by Garcia's company APDT. As part of their Join Venture Agreement, Individual E and Individual F wired $40,000 to BoA x2450 on or about March 03, 2024.

        i.  Individual E and Individual F did not receive their ROI as established in the Joint Venture Agreement.

    b.  On or about February 03, 2025, Individual G and Individual H entered into a Joint Venture Agreement with **Garcia**. The purpose of the Joint Venture Agreement was an investment into a music festival in Colombia to be hosted by APDT. As part of their investment, Individual G sent **Garcia** a check dated February 04, 2025, for $400,000, the check was made payable to "A Pesar de Todo LLC.". On or about February 05, 2025, the check was deposited into BoA x 6080.

Complaint – Page 8

c. In or around July 2025, Individual C invested $100,000 with Garcia for an upcoming APDT Concert scheduled for November 2025 in Bogota, Colombia. Garcia told Individual C their payment would be used to secure the stadium for the concert. On or about July 07, 2025, Individual C wired Garcia $100,000 to BoA x 2450. The November 2025 concert did not take place. Individual C did not receive their funds.

10. It was further part of the scheme and artifice to defraud that the defendant instructed victims to make their investments via payments to the church as donations.

a. Garcia directed Individual E to make their investments through donations to the Church. Individual E stated they put "investment" on the memo line for the wires they sent to Garcia.

*Concealing the Scheme*

11. It was further part of the scheme and artifice to defraud that Garcia directed victims to send their investment via donations to the Church.

a. Individual I stated that Garcia instructed investors to pay their investment funds via donations to the Church. Individual I believed Garcia provided this instruction to investors because donations show as revenue to the Church, which would be favorable for future loans. Individual I also believed Garcia provided this instructions because church donations are "non-refundable".

b. Individual J stated that Garcia instructed them to wire their investments as "tax- deductible donations" to the Church. Individual J stated Garcia

Complaint – Page 9

encouraged all investors to send their funds via the Gracia Church donation portal.

12. It was further part of the scheme and artifice to defraud that Garcia made lulling payments to investors when they requested a return of their funds, or inquired about the state of their investment.

    a. On or about November 3, 2021, Individual K transferred $40,000 to Garcia's Ministerio Gracia account FB x9115. The memo on the wire transfer was labeled "investment." On November 4, 2021, Garcia transferred $30,000 from FB x9115 to Individual L. The wire details indicated the purpose of the wire was for a "reimbursement."

    b. Individual G sent Garcia a check dated February 04, 2025 for $400,000, the check was made payable to "A Pesar de Todo LLC.". On or about February 05, 2025, the check was deposited into BoA x 6080. On or about February 20, 2025, Garcia transferred $397,000 from BoA x6080 to BoA 6077. On or about February 20, 2025, Garcia transferred $300,000 from BoA 6077 to BoA 2450. On or about February 20, 2025, and February 21, 2025, Garcia made two wire transfers for a total of $69,000 from BoA 2450 to Individual A as a reimbursement for an African mission trip.

13. It was further part of the scheme and artifice to defraud that Garcia would send fraudulent documents to induce investors to send additional funds.

    a. In or around June 2025, Garcia electronically contacted Individual E, via WhatsApp, requesting a personal loan. Garcia told Individual E that he

Complaint – Page 10

was selling one of the church properties to Individual I. Garcia stated he would use the proceeds to repay the loan from Individual E. Garcia provided Individual E a document titled "Texas Realtors Commercial Contract Amendment". The document listed the following buyer and seller of the aforementioned church property: Buyer – Ministerio Gracia with Garcia's signature dated 06/26/25; Seller – Iglesia Gracia de Texas with Individual I's signature dated 06/26/25.

b. Individual I confirmed that they never entered into a contract with Garcia to purchase a church, nor did they ever intend to purchase a church from Garcia. Individual I confirmed they did not sign the contract that was provided to Individual E by Garcia for the purposes of securing the personal loan.

14.    As a result of the scheme, over 60 individuals across the United States, and internationally paid approximately $ 2.2 million to Garcia for the purposes of investment into Gracia Church projects, or APDT respectfully, based on in part the representation of Garcia on what their investment funds would be used for. In reality, Garcia used the funds for unrelated expenses, lulling payments, and personal enrichment.

Complaint – Page 11

## CONCLUSION

Based on the above facts and circumstances, I respectfully submit there is probable cause to believe Richard Reinaldo Garcia committed wire fraud, in violation of 18 U.S.C. § 1343.

Megan Woodruff
Special Agent
Federal Bureau of Investigation

Sworn to before me, and subscribed in my presence on this 9TH day of April 2026, at 10:28 a.m./p.m., in Fort Worth, Texas.

HAL R. RAY, JR.
UNITED STATES MAGISTRATE JUDGE

Complaint – Page 12